*In the Matter of the Guardianship of*
*J.N.T., J.R.T., and J.M.T.*
In the Family Court of the Navajo Nation
Judicial District of Chinle, Arizona

No. CH-FC-537-04

January 4, 2005

## ORDER

The above captioned matter was filed in this Court on April 4, 2004 through a Motion of Immediate Temporary Custody, which was granted on April 12, 2004. From that date to the present the three minors who are the subject of this matter have remained in the custody of Petitioners, pending the outcome of a decision concerning custody between them and Respondent.

This case was complicated by the unusual circumstance of concurrent jurisdiction over the minors by the Staunton Juvenile and Domestic Relations Court of Virginia. Virginia had jurisdiction through a previous divorce and custody proceeding with the parents of the minors, jurisdiction which had never lapsed or otherwise was relinquished. The mother, now deceased, was an enrolled member of the Navajo Nation, as are the minors. The father is a non-Navajo currently residing in Virginia. At the time of the filing of the Petition, the minors were residing on the Navajo Nation with Petitioners, who are related by blood and clan or marriage to the mother.

On July 2, 2004, the Supreme Court of the Navajo Nation in a Memorandum Decision ruled that both this Court and the Virginia court had simultaneous jurisdiction over this matter. Further, the Supreme Court ordered this Court to determine whether it should maintain or yield its jurisdiction to Virginia, and it stayed all other matters to be heard by this Court concerning custody until that determination was reached. *In Re Guardianship of JWT, JRT, JMY*, No. SC-CV-43-04 (Nav. Sup. Ct. July 2, 2004) (Unpublished Memorandum Decision). In its Order, the Supreme Court requested this Court "to consider the effect of an order that is not consistent with Virginia laws on the best interests of the children."

Subsequent to the Memorandum Decision, this Court has maintained regular contact with Judge Ludwig of the Staunton Juvenile and Domestic Relations Court of Virginia, where a parallel custody case is pending. The two courts have worked cooperatively in order to obtain the necessary reports required by both courts that would be essential to reaching a final decision in this matter, wherever it would be decided.

All necessary reports were received by the end of September. A hearing was conducted on October 28, 2004, with the parties on the issue of jurisdiction. At the hearing, attorneys for the parties were more intent on arguing the merits of the custody dispute than upon the paramount issue of jurisdiction. The Court requested the parties to submit written briefs and proposed orders prior to a final hearing. To this date, the Court has not received any such papers.

Since the October 28 hearing this matter has remained in limbo, with scheduled hearings continued for various reasons. A current hearing date had been scheduled for February 28, 2005. Upon consideration of the reports received so far from Virginia, from the Division of Social Services of the Navajo Nation, and from the Guardian Ad Litem appointed by this Court, as well as all other documents and oral presentations presented by the parties in this matter and the Memorandum Decision issued by the Supreme Court, this Court ORDERS that the hearing scheduled for February 28, 2005, is vacated and that this Court will abstain from deciding the custody dispute on its merits and defer any decision concerning custody to Virginia, based upon the following:

1. As our Supreme Court pointed out, since there is concurrent jurisdiction, this Court would have no authority to enforce its orders outside the boundaries of the Navajo Nation if what it must enforce is contrary to the Virginia courts. Moreover, this Court could not have its contrary orders recognized by courts in other states because those courts are bound under the United States Constitution to recognize the decisions of the Virginia courts. States merely defer to decisions of the Navajo Courts as a matter of comity.

2. The father of the children is a resident of Virginia. It is generally in the best interest of children to live with their natural father in the absence of their mother, absent other factors indicating that the father would be

harmful to the children or a potential threat to their safety and welfare.

3. None of the reports received by this Court indicate that Respondent lives or has acted in a manner that would be contrary to the best interests of the children. The reports indicate that the children have bonded with Respondent.

4. Virginia is in a better position than this Court to assess the character, home, history and parenting skills of Respondent.

5. In its communications with Judge Ludwig, the person currently in the position to determine custody in Virginia, this Court has had no occasion to doubt that due process and fairness will be accorded to all parties when the case is to be heard in Virginia.

6. Virginia has not yielded its jurisdiction to the Navajo Nation and has given no indication of such intent to do so.

7. It is in the best interests of the children to have one court make a decision in this matter. While the mother moved to the Navajo Nation and left her children in the care of her relatives prior to her death, she made no attempt to resolve the jurisdiction of the Virginia court or to seek a change of jurisdiction to this Court. There is no benefit to having the children's futures decided by two different courts.

8. Traditional Navajo custom emphasizes the mother's clan in rearing children in the absence of the mother. However, this is done in consultation and agreement with the natural father of the children. This is true even if the father is not Navajo. If Petitioners have a basis for challenging the right or the ability of Respondent to properly care for his children, the matter can be more effectively determined in Virginia, where the father resides and where evidence concerning the basis of the claim would exist.

THEREFORE, THE COURT ORDERS THE HEARING SCHEDULED IN THIS MATTER FOR FEBRUARY 25, 2005, VACATED, AND FURTHER ORDERS THAT THIS COURT WILL DEFER TO THE VIRGINIA COURT IN A DECISION ON THE MERITS CONCERNING PROPER CUSTODY OF THE THREE MINORS IN THIS CASE.

The Court also notes that it is yielding this matter to Virginia without knowledge of how the matter is to be decided. However, if there is evidence presented in the future that Virginia decided this matter contrary to the principles and standards of comity, it will reopen this matter to determine if it should reassert its jurisdiction.

This Court also takes this opportunity to urge Virginia in its deliberations to consider what our Supreme Court stated: "Our children are our most important resource." The minors are members of the Navajo Nation, and they are entitled to all the privileges and benefits of such membership. All the reports received indicate that Petitioners have acted as very good caregivers to the minors for an

extended period of time. It is also a traditional Navajo custom to talk things out, meaning that all sides try to reach an agreement through extended discussion, rather than try to solve problems through the adversarial procedures of western style courts. Our courts keep this tradition alive through peacemaking procedures. It is hoped that Virginia will seek ways to bring the parties together in harmony in how these children should be cared for. If such can be done, that would truly be in the best interests of the children.